UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN SEGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23 CV 460 RWS |
| | ) | |
| MARTIN O'MALLEY[1], | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Ryan Seger brings this action seeking judicial review of the

Commissioner's decision denying his application for Supplemental Security

Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381.  42 U.S.C.

§§ 405(g) and 1383(c)(3) provide for judicial review of a final decision of the

Commissioner.  Because the Commissioner's final decision is supported by

substantial evidence on the record as a whole, I will affirm the decision of the

Commissioner.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## Procedural History

Plaintiff was born in 2001 and protectively filed his application on June 30, 2019.  (Tr. 11, 237-47.)  He alleges disability beginning June 1, 2019, at the age of 18, because of loss of large intestine, stomach cancer, Gardner's syndrome, autism, attention deficit hyperactivity disorder (ADHD), depression, social anxiety, and lack of social skills.  (Tr. 266, 270.)   Plaintiff graduated high school.  (Tr. 91.)

Plaintiff's application was initially denied on November 5, 2019.  (Tr. 141-47.)  After a hearing before an ALJ on May 23, 2022, the ALJ issued a decision denying benefits on August 31, 2022.  (Tr. 8-26.)  On February 15, 2023, the Appeals Council denied plaintiff's request for review.  (Tr. 1-7.)  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. § 1383(c)(3).

In this action for judicial review, plaintiff contends that his residual functional capacity (RFC) is not supported by substantial evidence.  He also argues that the ALJ improperly evaluated opinion evidence and his subjective symptoms. He asks that I reverse the Commissioner's final decision and remand the matter for further evaluation.  For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts (ECF #16-1) only to the extent they are admitted by

2

the Commissioner (ECF #19-1).  I also adopt the Commissioner's statement of additional facts, as they are not disputed by plaintiff (ECF #19-1).  Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A.    <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that he is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  At Step 1 of the process, the Commissioner begins by

3

deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, at Step 2 the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then he is not disabled.  At Step 3, the Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite his physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform his past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform his past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If he meets this burden and shows that he is unable to perform his past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating

that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with his impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). "Substantial evidence means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those

5

positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider whether a claimant's subjective complaints are consistent with the medical evidence. *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (listing factors such as the claimant's daily activities, the duration, frequency, and intensity of the pain, precipitating and aggravating factors, dosage, effectiveness and side effects of medication, and functional restrictions).[2] When an ALJ gives good reasons for the findings, the

---

[2] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); *Lawrence v. Saul*, 970 F.3d 989, 995 n.6

court will usually defer to the ALJ's finding.  *Casey v. Astrue*, 503 F.3d 687, 696

(8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full

and fair record in the non-adversarial administrative proceeding.  *Hildebrand v.*

*Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.    <u>ALJ's Decision</u>

In his written decision, the ALJ found that plaintiff had not engaged in

substantial gainful activity since June 30, 2019, the application date.  (Tr. 13.)  The

ALJ found that plaintiff had the following severe impairments: autism spectrum

disorder, attention-deficit hyperactivity disorder (ADHD), anxiety disorder,

depressive disorder, and residuals of colon cancer.  (Tr. 13.)  The ALJ found

plaintiff had the non-severe physical impairment of gastrointestinal reflux disorder

(GERD), which was well-controlled with medication.  (Tr. 13.)  The ALJ

determined that plaintiff's impairments or combination of impairments did not

meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  (Tr. 14.)  The ALJ found plaintiff to have the residual functional

capacity (RFC) to perform light work with the following limitations:

> except [he] can perform only simple, routine and repetitive tasks, can
> make only simple work related decisions; can tolerate only occasional
> contact with co-workers, supervisors and the general public; and is
> limited to jobs with only occasional changes to the work processes
> and procedures.

(8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive
analysis to be applied" when evaluating a claimant's subjective complaints).

(Tr. 15.)  The ALJ found that plaintiff had no past relevant work and relied upon vocational expert testimony to support a conclusion that that there were significant jobs in the economy of garment bagger (DOT #920.687-018, light, unskilled, SVP-2), dessert cup machine feeder (DOT #520.686-014, light, unskilled, SVP-2), and linking machine operator (DOT #529.685-162, light, unskilled, SVP-2) that plaintiff could perform.  (Tr. 20.)  The ALJ therefore found plaintiff was not disabled.  (Tr. 20.)

C.    RFC Determination

RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations."  20 C.F.R. § 404.1545(a).  "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

Plaintiff claims that his RFC is not supported by substantial evidence because there is no medical support for the exertional and non-exertional limitations in his RFC. Plaintiff's generalized assertions of error make it difficult to analyze plaintiff's arguments. There is, however, substantial evidence on the record as a whole to support the ALJ's RFC determination.

Plaintiff incorrectly suggests that the ALJ's RFC is not supported by substantial evidence unless there is a medical opinion which addresses his specific functional limitations. Although the RFC must be supported by some medical evidence, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Instead, the RFC must be determined by the ALJ based on all the relevant evidence, which includes his subjective symptoms, his testimony, the medical evidence, and his daily activities.

In this case, after considering all this evidence, the ALJ concluded that plaintiff retained the capacity to perform light work, with significant modifications tailored to his credible limitations. In so doing, he did not substantially err. The ALJ properly evaluated the medical evidence using the new regulations applicable to plaintiff's claim. *See* 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from [the claimant's own] medical sources."). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted); *See* 20 C.F.R. § 416.920b(c)(1)-(3) (2017) (statements on issues reserved to the Commissioner, such as statements that a claimant is or is not disabled, are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.").

While the ALJ does have a duty to fully and fairly develop the record, the ALJ is not required to obtain additional medical evidence if the evidence of record provides a sufficient basis for the ALJ's decision. *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011). Here, the substantial evidence on the record as a whole supports the ALJ's RFC determination and no additional consultative examinations were required.

With respect to his exertional limitations, the ALJ properly relied on the objective medical evidence of record, including imaging and physical examination findings. The ALJ thoroughly summarized the medical record in this case, which showed that plaintiff's colon cancer and associated surgery occurred years prior to his alleged onset date and while under the age 18 (Tr. 571-594), but his IEP noted

10

that he needed to be released from class early to avoid being jostled and needed near access to a restroom.  (Tr. 382.)  The ALJ noted that plaintiff's treatment regimen was stable, and he denied significant complaints, but was being watched closely due to his history of cancer, citing plaintiff's medical records at Tr. 452, 775-829, 1758-1930, 1932-2105, 2106-2279 as support.  In 2020 and 2021, his colonoscopies noted polyps (Tr. 552, 561), but his pouchoscopy and endoscopies were normal. (Tr. 548-551, 559, 1556.)  In May 2021, plaintiff reported an increase in GI symptoms (Tr. 535), but his exams were normal and he did not have issues with urgency, accidents, or other GI issues related to his resection. (Tr. 530-67, 830-50.)  Plaintiff's CT of the abdomen in December 2021 noted postsurgical changes with no evidence of gastrointestinal bleeding and new thickening of the gastric wall. (Tr. 1292.)

Based on plaintiff's updated imaging and the historical precautions, but lack of reporting of frequency or accidents, to account for any exertional limitations with respect to plaintiff's colon cancer the ALJ properly limited plaintiff to light work consistent with the residual functional capacity.  These limitations are consistent with plaintiff's treatment history and post-surgical examinations and test results.  None of the evidence of record supported greater restrictions on plaintiff's exertional limitations, and both plaintiff and his counsel conceded at the hearing that plaintiff's limitations were primarily non-exertional in nature.  (Tr. 87-88,

11

105.)  Although plaintiff may believe that the ALJ should have assessed the medical evidence differently to support greater limitations, it is not my role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in his determination of plaintiff's RFC.  *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016).  Under these circumstances, the ALJ did not err in evaluating plaintiff's exertional limitations when fashioning his RFC, and his decision is entitled to deference.

The same is true with respect to the non-exertional limitations in plaintiff's RFC.  To account for plaintiff's credible limitations with respect to his autism, ADHD, anxiety, and depression, the ALJ limited plaintiff to simple, routine and repetitive tasks, simple work related decisions, occasional contact with co-workers, supervisors and the general public, and occasional changes in the job setting and duties.  Here, the ALJ's RFC, including the non-exertional limitations, is supported by substantial evidence and explained in adequate detail.

The ALJ's non-exertional limitations in the RFC are also supported by the objective medical evidence of record as a whole.  Although plaintiff had a history of IEP in school, his test scores were average, his intelligence was average, and his IEP was focused on aiding him in completing homework on time and attention to tasks.  (Tr. 336-400.)  Plaintiff reported that he took the ACT and obtained a score of 24 on his ACT.  (Tr. 517.)

12

The ALJ also reviewed plaintiff's treatment records from his mental health providers, which also support the RFC's non-exertional limitations as his therapy notes indicated that plaintiff was able to count change, go out, spend time with friends, and participate in group therapy.  (Tr. 1077.)  Plaintiff stated that he did not pursue plans to become an electrician because of COVID.  (Tr. 573.)  He also stated that his "family continues to try and obtain disability for him" and that "he cannot get a job due to his VA benefits."  (Tr. 517.)   The ALJ noted that plaintiff's numerous mental status examinations by health care providers were generally normal aside from having some depressed and anxious affect, citing his treatment records located at Tr. 598-771.  Although plaintiff reported decreased concentration, his health care provider noted that his ADHD was well controlled with medications. (Tr. 535, 901,857, 937, 945, 1175-1228.)  Plaintiff was noted to have normal memory and cognitive ability.  (Tr. 417, 423, 431, 435, 440, 535, 531, 540, 544, 903, 891, 897, 910,945, 1178-1224.)  The ALJ noted that plaintiff's treatment records noted anxiety, depression, and trouble getting along with others, but improvement with medication, largely normal mental status exams, and that plaintiff went out as part of group therapy and was usually cooperative with providers, citing plaintiff's medical records appearing in the record as Tr. 404-43, 530-69, 851-1033, and 1175-1232.  Based on plaintiff's therapy records and ongoing issues with anxiety and depression but noted ability to go out and

13

otherwise cooperative behavior, the ALJ limited plaintiff to simple, routine and repetitive tasks, simple work related decisions, occasional contact with co-workers, supervisors and the general public, and occasional changes in the job setting and duties.

After thoroughly summarizing this evidence of plaintiff's conservative mental health treatment and largely normal examinations, as well as the opinion evidence from the record and plaintiff's daily activities and complaints of pain,[3] the ALJ formulated a restricted light work RFC based on plaintiff's credible non-exertional limitations of record with respect to his mental health impairments. None of the evidence supported greater restrictions on plaintiff's ability to perform simple, unskilled tasks with only gradual changes in the job setting and duties. Although plaintiff may believe that the ALJ should have assessed the medical evidence differently to support greater limitations, it is not my role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in his determination of plaintiff's RFC. *Hensley*, 829 F.3d at 934. Under these circumstances, the ALJ did not err in evaluating plaintiff's non-exertional limitations when fashioning his RFC, and his decision is entitled to deference.

---

[3] This evidence is discussed below and also supports the RFC determination, both with respect to the exertional and non-exertional limitations.

D.    Opinion Evidence

Plaintiff next argues that the ALJ erred in his evaluation of the medical opinion evidence when fashioning his RFC.  Plaintiff argues that the ALJ's evaluation of the opinion evidence in this case did not comply with the new regulations by discussing the supportability and consistency of the evidence, the two most important factors required by the new regulations.  *See* 20 C.F.R. § 416.920c(a)-(c) (2017) (in evaluating persuasiveness, ALJ should consider supportability, consistency, relationship with the claimant -- which includes length of the treatment relationship, frequency of examinations, examining relationship, purpose of the treatment relationship, and the extent of the treatment relationship, specialization, and other factors); 20 C.F.R. § 416.920c(b)(2) (2017) (the ALJ was required to explain how she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion).

Here, the ALJ adequately discussed the opinion evidence and prior administrative medical findings and reached a finding that was supported by substantial evidence on the record as a whole.

Regarding his physical limitations, the ALJ considered the prior administrative medical findings of the state agency medical consultant, Daniel Gwartney, M.D., and found them not persuasive.  (Tr. 18, 132-33.)  Dr. Gwartney

15

indicated plaintiff could perform work at the medium exertional level.  (Tr. 18, 132-33.)  The ALJ found the opinion "was not well supported and inconsistent with the record due to the claimant's history of colon cancer supporting additional physical limitations."  (Tr. 18.)  Thus, the ALJ found that plaintiff was *more* limited than Dr. Gwartney opined and instead limited him to light work.  In his own function report, plaintiff admitted he was able to lift up to 25 pounds, a fact that was only contradicted by his father as plaintiff reported to a treatment provider that his family continued "to try and obtain disability for him."  (Tr. 280, 285, 517.)  Although plaintiff argues the ALJ did not properly discuss this opinion (ECF 16 at 5), he fails to explain how the ALJ substantially erred by imposing *greater* restrictions on his level of functioning than those recommended by Dr. Gwartney or otherwise point to evidence demonstrating that he had disabling physical limitations.

With regard to plaintiff's mental limitations, the ALJ considered the prior administrative medical findings of the state agency psychological consultant, Charles W. Watson, Psy.D. and found them "mostly persuasive."  (Tr. 18, 133-35.)  An ALJ may rely on state agency medical and psychological consultants even though they do not examine the claimant.  *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (holding that "considering the State agency physicians' opinions was not itself an error, because the ALJ must consider all relevant evidence.").  Dr.

Watson found that plaintiff had some moderate mental impairments, but only a mild impairment in the area of understanding, remembering, or applying information.  (Tr. 18, 134.)  He opined that plaintiff could carry out two-step commands with adequate persistence and pace, but would struggle with detailed or complex instructions.  (Tr. 18, 134.)  According to Dr. Watson, plaintiff's ability to interact with co-workers and the public was reduced, but he had adequate ability to handle ordinary levels of supervision in a customary work setting and adapt to changes which were predictable and introduced gradually.  (Tr. 18, 134-35.)  Finally, Dr. Watson found that plaintiff retained the ability to perform simple tasks in an environment with changes made gradually and minimal contact with others.  (Tr. 18, 134-35.)

The ALJ explained that that Dr. Watson's findings were "generally well supported and consistent with the record, however his limitation to two-step tasks supported that plaintiff had a moderate impairment in understand, remember, or apply information."  (Tr. 18, 134-35.)  Once again, plaintiff fails to explain how the ALJ substantially erred by imposing *greater* restrictions on his level of functioning than those found by Dr. Watson.

Plaintiff claims error because the ALJ did not "adopt" all the limitations in Dr. Watson's opinion.  (ECF 16 at 4-5).  Here, the ALJ specifically explained that he equated the limitation to two-step tasks to a moderate, rather than mild,

limitation in the ability to understand, remember, or apply information and adequately accounted for this limitation by limiting plaintiff to simple, routine and repetitive tasks, with only simple work related decisions.  (Tr. 18, 134-35.) Moreover, the jobs identified by the vocational expert and relied upon by the ALJ in his decision[4] are all jobs with a reasoning level of one, which corresponds to one to two-step tasks as recommended by Dr. Watson.  *See Thomas v. Berryhill*, 881 F.3d 672, 678 (8th Cir. 2018) (one to two-step tasks correspond to reasoning level one).

Contrary to plaintiff's assertions, "the regulation does not require an ALJ to address each and every part of a medical opinion to show that the entire opinion was properly considered; nor does it require the ALJ to entirely adopt each and every part of an opinion simply because she finds it persuasive." *McClure v. Saul*, Case No.1:20CV150 SNLJ, 2021 WL 3856577, at *7 (E.D. Mo. Aug. 30, 2021); *Koss v. Kijakazi*, Case No. 4:20CV996 RLW, 2022 WL 715009, at *10 (E.D. Mo. Mar. 10, 2022) (same).  Here, the ALJ adopted the limitations suggested by Dr. Watson by limiting plaintiff to simple, routine, repetitive tasks with only occasional changes in the job setting and duties, and work requiring only simple decision-making.  He was not required to adopt Dr. Watson's conclusions

---

[4] The ALJ found that plaintiff could perform the jobs of garment bagger (DOT #920.687-018, light, unskilled, SVP-2), dessert cup machine feeder (DOT #520.686-014, light, unskilled, SVP-2), and linking machine operator (DOT #529.685-162, light, unskilled, SVP-2).

verbatim, as "the ALJ is free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022).

The ALJ then discussed the remaining opinions in the record and found them not persuasive. Plaintiff contends that the ALJ substantially erred by failing to properly address the supportability and consistency factors of these opinions.

The ALJ found the opinion of plaintiff's special education teacher, Roxanne Carwile not persuasive. (Tr. 18, 328.) On December 11, 2018, Ms. Carwile wrote a letter indicating plaintiff would require modifications and accommodations at both school and work. (Tr. 328.) In finding this opinion not persuasive, the ALJ explained that it was not well supported or consistent with plaintiff's academic records, which as previously discussed by the ALJ demonstrated that plaintiff's test scores were average, his intelligence was average, and he took the ACT and obtained a score of 24. (Tr. 328). The ALJ also found the opinion of plaintiff's pediatric nurse practitioner, Danielle Trotter, not persuasive. (Tr. 329.) On December 18, 2018, Ms. Trotter wrote a letter requesting approval for plaintiff to be "listed as a helpless child who will survive with his parents assistance." (Tr. 329.) Similar to the prior opinion, the ALJ noted that it was not well-supported or consistent with the current record which the ALJ detailed earlier in the decision. (Tr. 18, 329.) The ALJ also discounted these opinions as rendered before plaintiff's onset date of June 1, 2019.

As for plaintiff's treating mental health professionals, the ALJ considered the opinions of Alecia Vogel-Hammen, M.D., and Celina Rose Jacobi, M.D., and found them not persuasive.  (Tr. 401-03.)  On April 19, 2019, these doctors opined that plaintiff was limited in his ability to understand new information, make complex medical decisions, would need accommodation at work, would be unable to quickly learn new or complex tasks, and would have trouble navigating the social environments necessary for typical work.  The ALJ found their opinion not persuasive because it predated the alleged period of disability and was not well supported by the plaintiff's treatment records, which showed that plaintiff had improved significantly with medication and treatment but still struggled with anxiety.  (Tr. 406, 420, 426, 434-35, 439-40.)  The ALJ also determined that their opinion was inconsistent with plaintiff's school records, including his IEP, which did not document the level of impairment claimed by the treating physicians, but otherwise supported a finding of some mental limitations.  (Tr. 336-400.)

The ALJ also considered the opinion of Fadi Fouad Halabi, M.D., and found it not persuasive.  (Tr. 403.)  Dr. Halabi found plaintiff's ability to navigate social situations effectively was limited and that he had significant impairment due to his conditions, which he expected limited his ability to participate in gainful employment.  The ALJ concluded that Dr. Halabi's opinion was not persuasive because it was not well-supported and inconsistent with the record.  The ALJ

found that Dr. Halabi's opinion was vague, as it spoke in general terms about the characterizations of ADHD, and was not supported by exam findings.  Further, the ALJ determined that Dr. Halabi's opinion that plaintiff's mental disorders limited his ability to participate in gainful employment was a finding reserved for the Commissioner and was therefore not considered for its persuasiveness.

Finally, the ALJ considered the opinion of Shannon McGuire, M.D., and found it not persuasive. (Tr. 523-29.)  Dr. McGuire found plaintiff had mostly moderate or marked impairments, that his productivity would be 31% or more below average, that he could perform in a task-oriented setting where contact with coworkers was only casual and infrequent, that he could perform in a setting where supervisors provide simple instructions for non-detailed tasks with no more than 4 supervisor contacts per day, that he could not perform in a setting with any contact with the general public, and that he would be late/leave early or miss work three times a month or more.  The ALJ concluded that Dr. McGuire's opinion was not well-supported by her explanation and inconsistent with the record as a whole, which did not include objective exam findings or notations of dysfunction consistent with her findings marked mental impairments, below average production, and attendance.

Plaintiff again complains that the ALJ failed to evaluate the consistency and supportability of the opinion evidence.  Here, the ALJ considered the

21

"supportability" and "consistency" factors by noting that these opinions were not consistent with the other, objective medical evidence of record.  *See* 20 C.F.R. § 416.920c(c)(1) (the more relevant the objective medical evidence and supporting explanations are to support the opinion evidence, the more persuasive they will be).  "The paragraph concerning the ALJ's evaluation of a medical opinion cannot be read in isolation but must be read as part of the overall discussion." *Lerchaichanakul v. Kijakazi*, No. 4:22-CV-1002 SRW, 2023 WL 5128207, at *4 (E.D. Mo. Aug. 10, 2023) (cleaned up).  As the ALJ discussed throughout the decision, the objective evidence did not suggest plaintiff had disabling limitations. (Tr. 95-96, 98.)  The ALJ is not required to use the word "supportability" when considering persuasiveness.  *See, e.g.*, *Beyes v. Kijakazi*, Case No. 4:22CV614 SRW, 2023 WL 1765185, at *8 (E.D. Mo. Feb. 3, 2023); *Atwood v. Kijakazi*, Case No. 4:20CV1394 JAR, 2022 WL 407119, at *5 (E.D. Mo. Feb. 10, 2022) ("use [of] the words 'supportability' and 'consistency' is not determinative; word choice alone does not warrant reversal").

Here, the ALJ provided a similar analysis with the non-exertional limitations as with the evidence regarding his exertional limitations, noting whether or not the doctors' findings were consistent with the lengthy medical record previously summarized in his decision.   The ALJ correctly noted that he was not required to accept Dr. Halabi's opinion on disability.  *See Winn*, 894 F.3d at 987; 20 C.F.R. §

416.920b(c)(1)-(3) (2017).  The ALJ then incorporated those credible limitations which were consistent with the record evidence as a whole when fashioning plaintiff's RFC.  In so doing, he provided plaintiff a more restrictive RFC where the evidence as a whole supported it, and discounted those restrictions where inconsistent with the record evidence.  That is precisely the role of the ALJ, and although plaintiff may believe that he should have assessed the opinion evidence differently to support greater limitations, it is not my role to reweigh the medical evidence of plaintiff's limitations considered by the ALJ in his determination of plaintiff's RFC.  *Hensley*, 829 F.3d at 934.  The ALJ did not err in evaluating plaintiff's non-exertional limitations when fashioning his RFC, and his decision is entitled to deference.

Finally, plaintiff argues that the ALJ should not have relied on any of the opinions given by non-examining consultants because they were given almost a year prior to the hearing.  This argument is not persuasive as the opinions were issued after plaintiff's alleged onset date and are therefore relevant evidence that the ALJ was required to consider.  *See* 20 C.F.R. §§ 404.1513a, 416.913a; *Salsbury v. Berryhill*, No. 5:16-CV-06169-NKL, 2017 WL 4392051, at *9 (W.D. Mo. Oct. 3, 2017) ("Because state agency review precedes ALJ review, there is always some time lapse between the consultant' s report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may

23

pass between a report and the ALJ's decision in reliance on it.") (cleaned up).

Moreover, the ALJ did not rely solely on the opinion evidence when formulating

plaintiff's RFC.  Instead he considered all relevant evidence of record, including

the evidence which post-dated the opinions.

To the extent plaintiff attacks the opinion evidence because it was rendered

by non-examining consultants, he relies on caselaw predating the new regulations,

which now "require the ALJ to consider the opinions of state agency medical

consultants because they are highly qualified and experts in Social Security

disability evaluation."  *See* 20 C.F.R. § 404.1513a.  "The ALJ's reasonable

reliance on an opinion from a highly qualified expert is within the zone of choice."

*Morton v. Saul*, Case No. 2:19CV92 RLW, 2021 WL 307552, at *8 (E.D. Mo. Jan.

29, 2021).  The new regulations permit an ALJ to rely on opinion evidence from a

non-examining consultant if it meets the consistency and supportability factors.

*See* 20 C.F.R. § 416.920c(a) (2017) (when evaluating claims filed March 27, 2017,

or later, the agency "will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative

medical finding(s), including those from [the claimant's own] medical sources.").

Such a determination does not constitute reversible error as the new regulations

permit the ALJ to consider medical source evidence as appropriate.  20 C.F.R. §

416.920a(b)(1) (2017).  Ultimately, "the interpretation of physicians' findings is a

factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). Here, the ALJ did not substantially err in his assessment of the opinion evidence, and his decision is entitled to deference.

F.    Subjective Symptom Evaluation

Plaintiff also alleges that the ALJ improperly evaluated his credibility. In addition to evaluating the medical evidence, the ALJ formulated plaintiff's RFC after consideration of the entire record, which included an evaluation of plaintiff's subjective symptoms, his testimony, and his daily activities as described by plaintiff and others. When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole. 20 C.F.R. § 404.1529(c); SSR 16-3p. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari,* 274 F.3d 1211, 1218 (8th Cir. 2001). The Court must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication;

25

and any functional restrictions.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322.  "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible."  *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).  It is not enough that the record contains inconsistencies.  Instead, the ALJ must specifically demonstrate in his decision that he considered all of the evidence. *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld.  *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ summarized plaintiff's testimony regarding his daily activities and subjective allegations of his limitations and found plaintiff's statements about the intensity, persistence, and limiting effects of her impairments not entirely consistent with the evidence of record.  The ALJ acknowledged plaintiff's reported symptoms and went on to weigh these allegations against the evidence of record as required by 20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ determined that plaintiff's subjective allegations with respect to his physical and mental impairments were not supported by the objective

medical evidence of record. (Tr. 14-19.)  With respect to his exertional limitations, the ALJ properly relied on the objective medical evidence of record, including imaging and physical examination findings, which showed post-surgical normal pouchoscopy and endoscopies and no issues with urgency, accidents or other GI issues following his resection.  Additionally, a CT scan of plaintiff's abdomen in December 2021 noted postsurgical changes without bleeding and new thickening of the gastric wall.  *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints).

With respect to plaintiff's non-exertional impairments, the ALJ also properly considered that plaintiff received a score of 24 on his ACT,[5] his test scores in school were average, and his intelligence was average.   (Tr. 14, 517.)  Moreover, plaintiff's mental status exams were consistently normal aside from having a depressed and anxious affect, and his ADHD was well-controlled with medication. (Tr. 535.)  If a claimant's pain is controlled by treatment or medication, it is not considered disabling.  *See Cypress v. Colvin,* 807 F.3d 948, 951 (8th Cir. 2015). The ALJ properly considered plaintiff's treatment notes and objective findings, which as detailed above showed that his subjective allegations regarding his non-

---

[5] Plaintiff actually reported that he should have received a 29, but his "English section was somehow not counted."  (Tr. 517.)  At the hearing before the ALJ, he testified that, while in high school, he was "exceptional in math" and that "science was a close second."  (Tr. 95.)

exertional limitations were not entirely consistent with his routine mental health treatment, consisting primarily of regular doctor's appointments, therapy, and medication. (Tr. 17-22.) *See Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (noting that in evaluating the claimant's subjective complaints, the ALJ properly considered the claimant's pattern of conservative treatment). Plaintiff's improvement with conservative treatment is inconsistent with disabling impairments. *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (ALJ's conclusions as to the severity of pain and limitations consistent with fact that claimant was prescribed generally conservative treatment).

In assessing plaintiff's RFC, the ALJ appropriately considered his activities of daily living and his own reported abilities and did not, as alleged by plaintiff, rely solely on objective findings. (Tr. 16-17.) *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). In his function report, plaintiff alleged that he was able to care for himself and helped take care of pets with reminders, prepare basic meals, clean his room, do laundry, and walk places, but did not shop in stores, manage his finances, and could not go out alone. He reported that he played video games all day. He claimed that his conditions limited his lifting, talking, memory, completing tasks, concentration, understanding, following instructions, and getting along with others. He reported that he was able to lift 25 pounds, walk less than a mile before he needed to rest for 5 minutes, and used a wheelchair that was

prescribed in 2015 when his body was weak. He claimed that his medications caused dry mouth, weakened heart wall, and prevented him from driving. He was noted as not answering his phone when clarification was needed for his Function Report and his father stated that the claimant overestimated his lifting. (Tr. 280-90.)

At the hearing, plaintiff testified that he and his parents did not trust him to get a driver's license due to difficulties trying to learn to drive. He claimed that he was unable to work due to his problems with concentrating. He was able to prepare very basic meals but lacked motivation. He helped with shopping but had trouble finding things. He could follow a list, put things in the dishwasher, and clean around the house, but did not work outside due to problems lifting over 25 pounds due to abdominal pain. He reported that he could respond to most emergencies by contacting emergency services. He testified that he forgot to bathe for 2 months until his parents reminded him. He claimed that he would have trouble putting things in a case due to frequent bathroom breaks. He testified that he drinks 3 liters a day, had to use the restroom 5 or 6 times, had accidents, and initially needed soil proof bedding. He reported that his symptoms had improved, but he had sometimes had trouble with accidents while flatulent. He claimed to have frequent diarrhea, urgency, abdominal pain, and was unable to do sit-ups. He reported that he had trouble making friends, stayed to himself, and did not talk a

lot.  He reported that he was not as strong as he was before but could clean his room with reminders.  He claimed to have issues with picking at things like frayed jeans, was nervous, and had trouble turning in assignments.  He testified that he had a particular routine and had trouble reading facial expression or responding with appropriate facial expressions.  He had done a work study at a senior center, but he had difficulty due to needing reminders, was with someone, and the job ended due to the time being up.  He alleged trouble with changes in routine, falling asleep, zoning out, thinking about consequences, long-term memories, making decisions, nervousness, and did not want to go anywhere by himself.  (Tr. 89-117.)

In weighing plaintiff's credibility, the ALJ concluded that plaintiff's daily activities were not entirely consistent with his testimony and claimed limitations, and the ALJ can take notice of such "inherent inconsistencies" in the record. *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004) ("We have been careful to explain that an ALJ may disbelieve a claimant's subjective reports of pain because of inherent inconsistencies or other circumstances.").  For example, the ALJ noted that plaintiff reported that he did not go out, but treatment records showed that he was able to go out and socialize as a part of group therapy, and he went to church every Sunday and played games with people on Xbox.  (Tr. 14, 281-87, 322-24.)  In his function report, plaintiff indicated he could lift 25 pounds, but when the agency called for clarification, plaintiff did not answer his phone and

his father claimed that plaintiff could "barely lift a gallon of milk." (Tr. 16, 280, 285.)  At the hearing before the ALJ, plaintiff continued to insist that he had a 25 pound weight limit but stated that it depended on how much activity he did beforehand.  (Tr. 103.)  Moreover, the ALJ found it significant that plaintiff claimed that he was unable to work due to his problems with concentrating, yet he played video games 10 hours a day and "pretty eas[il]y" figured out how to play new games.  (Tr. 16, 93.)  Plaintiff also played the trumpet in the school band.  (Tr. 97-99.)  Further, plaintiff testified that he had trouble making friends, stayed to himself, and did not talk a lot, but he had a girlfriend.  (Tr. 16, 108.)  Plaintiff also wanted to go to Unitech to be an electrician but noted that his family continued "to try and obtain disability for him" and that he could not get a job "due to his VA benefits" and COVID.  (Tr. 517.)

The ALJ properly considered these inconsistencies when evaluating plaintiff's allegations, as "the inconsistency between plaintiff's subjective complaints and evidence regarding his activities of daily living also raised legitimate concerns about his credibility."  *Vance v. Berryhill*, 860 F.3d 1114,1121 (8th Cir. 2017) (cleaned up); *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

The ALJ did not substantially err in concluding that plaintiff's activities[6] demonstrate that his physical and mental limits were not as severe as alleged. *See, e.g.*, *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."); *Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) ("Plaintiff himself admits to engaging in daily activities that this court has previously found inconsistent with disabling pain, such as driving, shopping, bathing, and cooking.") (cleaned up).

Even if the ALJ could have drawn a different conclusion about plaintiff's credibility after reviewing his daily activities, I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary determination. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Here, the ALJ discounted plaintiff's subjective complaints only after evaluating the entirety of the record. In so doing, he did not substantially err, as subjective complaints may be discounted if inconsistencies exist in the evidence as a whole. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994).

---

[6] It is expected that the activities testified to by plaintiff and evaluated by the ALJ in his credibility assessment relate primarily to school activities and hobbies given that plaintiff applied for benefits at the age of 18.

The ALJ expressly acknowledged that plaintiff was experiencing pain, but concluded, after evaluating the entirety of the record, that plaintiff's pain was not so severe as to be disabling. Where, as here, an ALJ seriously considers but for good reasons explicitly discounts a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001). The ALJ evaluated all of the evidence of record and adequately explained his reasons for the weight given this evidence. Because the ALJ's reasons for not fully crediting plaintiff's subjective complaints are supported by the record, the Court will defer to his judgment. *See Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001). Credibility determinations, when adequately explained and supported, are for the ALJ to make. *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

In this case, the ALJ evaluated all of the evidence of record and adequately explained his reasons for the weight given this evidence in a manner consistent with the new regulations. He ultimately concluded that plaintiff's "records were inconsistent with his testimony and did not establish either the frequency of the intestinal issues or the severity of the psychiatric issues that he alleged" and "based on the claimant's treatment notes, grossly normal mental status exams aside from depression and anxiety, and reporting to providers that he wanted to go to school as an electrician but was unable to due to COVID," the ALJ found plaintiff was able

33

to do light work as modified to account for his credible limitations. (Tr. 19.) Good reasons and substantial evidence in the record as a whole support the ALJ's RFC determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is

affirmed, and Ryan Seger's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 1st day of August, 2024.